# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SIAMEK SALEHI, et al.                     *

    Plaintiffs                           *

    v.                                   *          Civil No.: BPG-21-2031

BUILDERS MUT. INS. CO.                    *

    Defendant                            *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Currently pending before the court are Defendant Builders Mutual Insurance Company's Motion for Summary Judgment ("defendant's Motion") (ECF No. 35), defendant's Memorandum in Support of Defendant Builders Mutual Insurance Company's Motion for Summary Judgment (ECF No. 36), Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("plaintiffs' Cross-Motion") (ECF No. 37), Defendant Builders Mutual Insurance Company's Opposition to Plaintiffs' Motion for Summary Judgment and Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("defendant's Opposition and Reply") (ECF No. 40), and Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("plaintiffs' Reply") (ECF No. 41).  Also before the court is Plaintiffs' Motion for Leave to Supplement Their Cross-Motion for Summary Judgment ("plaintiff's Motion to Supplement") (ECF No. 42) and Defendant Builders Mutual Insurance Company's Opposition to Plaintiffs' Motion for Leave to Supplement Their Cross-Motion for Summary Judgment (defendant's Opposition") (ECF No. 43).  The issues are fully briefed, and no hearing is necessary.  Loc. R. 105.6.  For the reasons discussed herein, plaintiffs' Motion to

Supplement (ECF No. 42) is granted, defendant's Motion for Summary Judgment (ECF No. 35) is granted, and plaintiff's Cross-Motion for Summary Judgment (ECF No. 37) is denied.

## I.   <u>BACKGROUND</u>

In ruling on a motion for summary judgment, the court considers the facts and draws all reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  When the parties have filed cross motions for summary judgment, in "considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossingnol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).  On August 12, 2016, Ellison Custom Homes, Inc. ("Ellison") contracted with plaintiffs to build a new home.  (ECF No. 36 at 8). Plaintiffs moved into the home in May 2018.  (Id.)  In this case, plaintiffs seek to recover damages directly from Ellison's insurer, defendant Builders Mutual Insurance Company, pursuant to Maryland Code, Insurance Article § 19-102, which allows plaintiffs the opportunity to recover damages owed and unpaid by Ellison.[1]  Plaintiffs successfully brought suit against Ellison in the Circuit Court for Anne Arundel County, Maryland, and were awarded damages.  (ECF No. 37-23).  Accordingly, the court begins its analysis with a brief recitation of the procedural history of the lawsuits between plaintiffs and Ellison.

---

[1] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

**A. <u>Ellison's Mechanic's Lien Suit Against Plaintiffs in the Circuit Court for Anne Arundel County</u>**

On May 29, 2018, Ellison filed a Complaint to Establish and Enforce Mechanic's Lien and For Damages in the Circuit Court for Anne Arundel County, Maryland.  (ECF No. 36-8).  Ellison claimed that a total of $131,123.19 was outstanding pursuant to the parties' contract.  (<u>Id.</u>)  On June 5, 2018, plaintiffs sent Ellison a letter, threatening to "refer this matter to [their] attorney" if Ellison did not complete the work remaining on the home.  (ECF No. 36-9).  On November 2, 2018, plaintiffs filed a counterclaim against Ellison for breach of contract and breach of warranty, alleging that Ellison (1) failed to complete the work in a timely manner, (2) used defective materials to complete the work, and (3) used defective construction techniques in building plaintiffs' home.  (ECF No. 36-10).  Ellison filed a motion to strike plaintiffs' counterclaim, which the Circuit Court granted on December 17, 2018.  (ECF No. 37 at 12).  Ellison's claims proceeded to trial, which lasted five days and included testimony from "a dozen witnesses (some more than once), and several dozen exhibits."  (<u>Id.</u>)  On August 22, 2019, the court issued a decision denying Ellison's request for a mechanic's lien.  (<u>Id.</u>)

**B. <u>Plaintiffs' Suit Against Ellison in the Circuit Court for Anne Arundel County</u>**

On March 7, 2019, in the Circuit Court for Anne Arundel County, plaintiffs filed their two-count Complaint against Ellison, alleging (1) breach of contract, and (2) breach of warranty.  (ECF No. 36-12).  Plaintiffs filed an Amended Complaint on July 3, 2019, which added Counts 3 and 4: (3) negligence, and (4) violation of the Maryland Consumer Protection Act ("MCPA").  (ECF No. 36-13).  On January 13, 2020, plaintiffs filed a Motion for Partial Summary Judgment as to liability.  (ECF No. 37-15).  Ellison filed its response on January 29, 2020.  (ECF No. 37-16).  In September 2020, Ellison's attorneys withdrew from the case.  (ECF No. 36 at 10).  On September 30, 2020, the court issued a Notice to Employ New Counsel to Ellison.  (ECF No. 36-14).

A hearing on plaintiffs' Motion for Partial Summary Judgment was held on Monday, November 2, 2020.  (ECF No. 36-15).  Ellison failed to appear by counsel at the hearing because Ellison had not retained new counsel.  (ECF No. 36 at 11).  Plaintiffs' Motion for Partial Summary Judgment was granted on the first three counts of the Amended Complaint.  (ECF No. 36-15).  Due to Ellison's failure to appear by counsel, on November 4, 2020, plaintiffs filed a Request for Order of Default, which the court granted on November 23, 2020.  (ECF No. 36-16).  On November 20, 2020, plaintiffs filed a Request for Entry of Default Judgment, seeking damages in the amount of $713,612.27.  (ECF No. 36-17).  Plaintiffs additionally requested $220,790.68 in attorneys' fees, which were to be paid to the prevailing party pursuant to Article 21 of Ellison's contract with plaintiffs.  (Id.)  On January 21, 2021, the Circuit Court entered a default judgment and awarded damages to plaintiffs, on all Counts of their Amended Complaint, in the amount of $713,612.27, and $220,790.60 in attorneys' fees.  (ECF No. 37-23).

### C. **Plaintiff's Coverage Action Against Builders Mutual Insurance Company**

On June 24, 2021, plaintiffs filed this suit in the Circuit Court for Anne Arundel County, asserting one count: a direct action for payment of the final judgment entered against Ellison pursuant to Maryland Code, Insurance Article § 19-102.  (ECF No. 4 ¶¶ 5-11).  Defendant removed the case to this court on August 11, 2021.  (ECF No. 1).  On July 29, 2022, defendant filed a motion for summary judgment, contending that plaintiffs' direct action cannot stand because Ellison failed to inform defendant of the filing of plaintiffs' lawsuit against Ellison and defendant's insurance policy does not cover the damages awarded to plaintiffs.  (ECF No. 36 at 1-2).  On August 18, 2022, plaintiffs filed a cross-motion for summary judgment arguing that they are entitled to recover $299,206.00[2] from defendant, as Ellison's insurer, pursuant to Maryland Code, Insurance Article,

---

[2] In plaintiffs' Cross-Motion for Summary Judgment, plaintiffs seek only those damages awarded for the cost of correcting damage to (1) the living room roof and porch roof (i.e., $290,953.00) and to (2) drywall, insulation, paint

§ 19-102, because defendant was not actually prejudiced by Ellison's failure to inform defendant of the lawsuit, and a "substantial portion of the damages awarded" were covered by defendant's policy with Ellison.  (ECF No. 37 at 21-35).

## II.    <u>DISCUSSION</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  <u>Id.</u>  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co., Inc. v. Cameo Props.</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  <u>Anderson</u>, 477 U.S. at 252.

---

and trim (<u>i.e.</u>, $8,253.00), totaling $299,206.00.  (ECF No. 37 at 35).  Although plaintiffs offer an argument that the damages awarded on their MCPA claim are recoverable (<u>id.</u>), which the court discusses below, they do not include those damages in their requested relief, nor do they argue that they are entitled to recover attorneys' fees.  (<u>Id.</u>)

In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, and must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.  Where, as here, the parties file cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F. Supp. 170, 171 (D. Md. 1985).

Plaintiffs assert a single count in their Complaint: a claim pursuant to Maryland Code, Insurance Article § 19-102 "which obligate[s] [defendant] to pay the underlying judgment as insurer of [Ellison] during the relevant period."  (ECF No. 4 at 3).  Defendant contends that plaintiffs are not entitled to recovery because: (1) Ellison failed to notify defendant of plaintiffs' claims and thereby prejudiced defendant by hampering defendant's ability to provide Ellison with a defense, and (2) the damages awarded to plaintiffs are not covered by Ellison's policy with defendant.  (ECF No. 36 at 14, 21).  Plaintiffs respond that Ellison notified defendant of the claim prior to judgment and, therefore, defendant was not prejudiced by the late notice, and, further, that

the $299,206.00 in damages plaintiffs seek are covered by Ellison's policy with defendant.  (ECF No. 37 at 21, 30).

### A. **Plaintiffs' Motion to Supplement**

As a preliminary matter, plaintiffs move for leave to supplement their Cross-Motion, to add additional exhibits related to the pending dispute.  (ECF No. 42).  The court may grant a party's Motion for Leave to Supplement upon a showing by the moving party that the supplemental information is (1) material and (2) there were reasonable grounds for the party's failure to previously submit such evidence.  25 C.F.R. § 581.5.  Plaintiffs seek to supplement their Cross-Motion with a Certificate of Occupancy for plaintiffs' home.  (ECF No. 42 at 2).  As to the first factor, the materiality of the supplemental information, plaintiffs argue that the Certificate supports their claim that Ellison "never completed" plaintiff's home (i.e., the home had to be completed by someone else), such that the exclusion for "completed operations" cannot apply to Ellison's work.  (Id. at 2).  As to the second factor, plaintiffs state that the Certificate was produced on September 23, 2022, after plaintiffs' timely filing of their Cross-Motion.  (Id.)  Because the Certificate of Occupancy provides documentary support for plaintiffs' argument, and was not available prior to the timely submission of plaintiffs' Cross-Motion, the court grants plaintiffs' Motion for Leave to Supplement, and, in turn, considers the attached exhibits (i.e., Exhibits 37 and 38) in its resolution of the pending Motions.

### B. **Late Notice and Actual Prejudice**

Defendant moves for summary judgment in its favor, stating that Ellison's failure to notify defendant of plaintiffs' claims constituted actual prejudice because defendant's ability to defend against plaintiffs' claims was hampered by the late notice.  (ECF No. 36 at 13-20).  Maryland Code, Insurance Article, § 19-110 states that "an insurer providing a liability insurance policy may

disclaim coverage if an insured breached the policy by giving late notice of a claim and establishes by a preponderance of the evidence that late notice resulted in actual prejudice to the insurer." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Fund For Animals, 153 A.3d 123, 135-36 (Md. 2017) (citing Md. Code, Ins. Art., § 19-110).  To that end, the law permits the insurer to disclaim coverage only when two conditions are met: (1) the insured must have "breached the policy by failing to cooperate with the insurer," and (2) the insurer must demonstrate, "by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer." Id.  In order for defendant to prove that late notice of the claim resulted in actual prejudice, "the evidence, viewed most favorably to [plaintiffs], ha[s] to compel the conclusion that actual harm to [defendant] resulted from the delay in receiving notice of [plaintiffs'] claim and that no reasonable jury could find otherwise."  Id.  "The case for finding prejudice as a matter of law is strongest for primary insurers who receive notice after a judgment."  Prince George's Cnty v. Loc. Gov't Ins. Tr., 879 A.2d 81, 97 (Md. 2005).  Maryland courts have "found actual prejudice in instances where the insured's breach has: precluded the insurer from establishing a legitimate jury issue or presenting potentially outcome-determinative evidence, hampered the insurer from presenting a credible defense, or impeded an insurer's right to involvement or participation in the litigation." Id. (internal citations omitted).  The ultimate consideration, however, is whether the insured's failure to cooperate with the insurer "has, in a significant way, precluded or hampered [the insurer] from presenting a credible defense to the claim."  Id.

First, defendant must demonstrate that Ellison breached the insurance agreement by failing to notify defendant of the events giving rise to plaintiffs' suit against Ellison and of the claim itself. See Sherwood Brands, Inc. v. Great Am. Ins. Co., 13 A.3d 1268, 1286 (Md. 2011) ("[I]n order for § 19-110 to be in play, the insured must breach the insurance policy 'by failing to cooperate with

the insurer or by not giving the insurer required notice.'") (internal citation omitted).  Here, the insurance policy requires the insured to "notify [defendant] as soon as practicable" of any claim or suit against the insured.  (ECF No. 36-2 at 51).  Failure to comply with the notice requirement, therefore, constitutes a breach of the policy.  Sherwood Brands, Inc., 13 A.3d at 1287.

On October 30, 2020, Mr. Ellison spoke with his insurance broker regarding terminating Ellison's workers' compensation policy.  (ECF Nos. 36 at 10, 37 at 14).  During the call, Mr. Ellison informed the broker of plaintiffs' lawsuit.  (Id.)  The broker provided Mr. Ellison with a phone number on which Mr. Ellison could report the claim.  (Id.)  Mr. Ellison states that he called, spoke to no one, and left a message with his name and phone number, but never received a call back.  (Id.)  Plaintiffs suggest that Mr. Ellison called "shortly after October 30, 2020, before the entry of partial summary judgment on liability," which took place on November 2, 2020.  (ECF No. 37 at 24).  The parties do not dispute that, at the very earliest, Ellison notified defendant of the claims and suit against Ellison on or around October 30, 2020, well after (1) plaintiffs threatened to sue Ellison for the alleged defective construction on June 5, 2018; (2) plaintiffs filed their counterclaim in Ellison's Mechanic's Lien suit on November 2, 2018; and (3) plaintiffs filed their Complaint in the case against Ellison on March 7, 2019.  (ECF Nos. 36 at 8-11, 37 at 12-14).

Under the terms of the policy, Ellison was obligated to inform defendant of the claim as soon as was practicable.  Ellison was obligated upon any of the three circumstances noted above, to notify defendant of the possibility of a claim.  Ellison instead waited until October 30, 2020 to inform defendant about the pending lawsuit, and, therefore, breached its duty to notify defendant of the claim "as soon as practicable."  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 153 A.3d at 136 (holding that where policy required notice "as soon as practicable," giving notice of a claim on March 1, 2010, when the claim arose in September 2007, constituted a breach of contract).  By

9

failing to give defendant notice consistent with the terms of the agreement, Ellison breached the policy.  Accordingly, the court concludes that § 19-110 applies, and defendant must demonstrate that actual prejudice resulted from Ellison's late notice.

Second, "Section 19-110 requires the insurer to show how it was prejudiced by the insured's late notice in investigating, settling, or defending of the underlying actions."  Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 153 A.3d at 138 (citing Sherwood Brands, Inc., 13 A.3d at 1287). Defendant argues that it was prejudiced by Ellison's failure to notify defendant of the claims against it and that it did not become aware of any of plaintiffs' claims until it was served with plaintiffs' Complaint in this case.  (ECF No. 36 at 10, 14-17).  Plaintiffs respond that Ellison notified defendant of plaintiffs' suit against Ellison on or about October 30, 2020, before the entry of partial summary judgment on November 2, 2020 and the entry of default judgment in January 2021.  (ECF No. 37 at 24).  To prove actual prejudice, defendant must show that the failure to notify (i.e., the breach), resulted in actual harm to defendant.  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 153 A.3d at 136 ("the 'results in actual prejudice' element simply means that actual prejudice came about because of, or as a consequence of, the breach.").  Under Maryland law, "the proper focus [in finding actual prejudice] should be on whether the insured's willful conduct has, or may reasonably have, precluded the insurer from establishing a legitimate jury issue of the insured's liability.").  Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co., 767 A.2d 831, 843 (Md. 2001).

Viewing the evidence in the light most favorable to plaintiffs, there remains a factual dispute as to whether defendant suffered actual prejudice as a result of Ellison's late notice. Defendant contends that, assuming notice was given prior to the hearing on plaintiffs' motion for partial summary judgment and the entry of default judgment, it would have been impossible to

resurrect a case that had been abandoned since Ellison's counsel withdrew in September 2020. (ECF No. 36 at 17-18).   Plaintiffs respond that even if defendant received short notice of the hearing on plaintiffs' motion for partial summary judgment, the order was interlocutory and subject to revision, and further, default judgment was entered months later in January 2021, during which time defendant could have become involved in the case.  (ECF No. 37 at 24).

Defendant argues that it was prejudiced by Ellison's late notice because, had it been notified of plaintiffs' claims, it would have engaged in settlement negotiations and defended Ellison against plaintiffs' claims.  (ECF No. 36 at 18).  Plaintiffs counter that defendant's Rule 30(b)(6) designee provided only conjecture and speculation as to whether, if notice was timely given, defendant would have become involved in Ellison's defense. (ECF No. 37 at 26).  Plaintiffs argue that the affidavit of Catherine Padula on which defendant relies should be excluded because it contradicts statements made by defendant's Rule 30(b)(6) designee.  (Id. at 27).  As to whether defendant would have provided a defense, defendant's Rule 30(b)(6) designee stated that "it's likely [defendant] would have provided a defense in this case," and Ms. Padula's affidavit provides that defendant "would have defended the suit."  (ECF Nos. 37 at 26-27, 40 at 12, n.6).  As to settlement, defendant's Rule 30(b)(6) designee stated that defendant "probably would have made a settlement offer," and Ms. Padula's affidavit provides that defendant "would have participated in all settlement efforts and mediation."  (Id.)  Defendant's Rule 30(b)(6) designee did not disclaim knowledge of any facts later revealed by Ms. Padula.  Indeed, Ms. Padula's affidavit contains no new facts, but rather states the same position as defendant's Rule 30(b)(6) designee with more certainty.  Accordingly, the court declines to exclude Ms. Padula's affidavit.

Defendant argues that credible defenses exist as to all of plaintiffs' claims.  (Id. at 11).  To that end, defendant would have presented evidence at the partial summary judgment hearing that

(1) plaintiffs were perpetually dissatisfied with Ellison's work and made numerous change requests during the course of the construction, and otherwise refused to allow Ellison to complete repairs, (ECF No. 36 at 18); (2) the fireplace was not, as plaintiffs alleged, structurally unsound, hardwood floors were installed properly, and the correct materials were used to make repairs, (Id. at 18-19); and (3) Ellison had not fraudulently overbilled plaintiffs on any occasion (Id. at 19-20). It is unclear to the court, however, whether these claims were ever fully pursued by Ellison's counsel, because Ellison did not appear by counsel at the hearing on plaintiffs' motion for partial summary judgment.  (ECF No. 36 at 11).  Moreover, it is unclear, but certainly possible, that Ellison's late notice, while not entirely precluding defendant from participating in plaintiffs' lawsuit, hampered defendant's ability to conduct a factual investigation and pursue legal arguments that could have affected the outcome.  The court, therefore, concludes that a genuine dispute of material fact remains as to whether defendant suffered actual prejudice as a result of Ellison's breach of the notice provision of the policy.  Accordingly, summary judgment is not appropriate on this issue.

**C. Coverage under Ellison's Policy**

Defendant argues that the damages awarded to plaintiffs in their suit against Ellison are not covered by Ellison's insurance policy with defendant, and, therefore, are unrecoverable pursuant to Insurance Article § 19-102.  (ECF No. 36 at 21).  Specifically, defendant contends that plaintiffs' defective construction claim does not constitute property damage caused by an occurrence within the meaning of the policy, and even if plaintiffs can establish coverage, plaintiffs' claims are excluded by the policy's "your work" exclusions.  (Id.)  Plaintiffs do not seek to recover the entirety of the judgment against Ellison in this case, but rather contend that because Ellison's defective design and construction resulted in damage to other non-defective parts of the home, the

damage, which totals $299,206.00, constitutes property damage caused by an occurrence and is not subject to the "your work" exclusions.  (ECF No. 37 at 31-32).  Accordingly, whether plaintiffs' claim is covered by the policy turns on the appropriate interpretation of the terms: "property damage" and "occurrence," and the applicability of the "your work" exclusions to coverage.  (ECF Nos. 36 at 21, 37 at 13-15).

Maryland law provides that insurance policies are interpreted in the same manner as other contracts.  French v. Assurance Co. of Am., 488 F.3d 693, 700 (4th Cir. 2006) (quoting Nationwide Ins. Co. v. Rhodes, 732 A.2d 388, 390-91 (Md. 1999)).  In doing so, the court gives effect to the intention of the parties.  Id.  When the language of the policy is clear, "the court will presume that the parties intended what they expressed, even if the expression differs from the parties' intentions at the time they created the contract."  Id.  "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer."  Mut. Benefit Grp. v. Wise M. Bolt Co., Inc., 227 F. Supp. 2d 469, 473-74 (D. Md. 2002).  "The interpretation of a contract is a question of law," appropriately resolved by dispositive motion.  Allstate Ins. Co. v. Rochkind, 381 F. Supp. 3d 488, 510 (D. Md. 2019).  It is well-settled that "[t]he party seeking coverage has the burden of proving that the claim is within the policy's insuring agreement."  Nationwide Mut. Fire Ins. Co. v. Beazer Homes, LLC, No. JMC-19-68, 19 WL 4805679, at *4 (D. Md. Oct. 1, 2019).  On summary judgment, plaintiffs "bear[ ] the burden of proving every fact essential to [their] right to recovery, ordinarily by a preponderance of the evidence."  Bel Air Auto Auction, Inc. v. Great Northern Ins. Co., 534 F. Supp. 3d 492, 500 (D. Md. 2021) (citations omitted).  If coverage is established, however, the burden shifts to the insurer to prove the applicability of any exclusion to coverage.  Beazer Homes, LLC, 19 WL 4805679, at *4.

The policy obligates defendant to indemnify Ellison, for "'property damage' to which this insurance applies," meaning "'property damage' caused by an 'occurrence'" unless otherwise excluded by the terms of the policy.  (ECF No. 36-2 at 42).  For the court to find coverage, plaintiffs must satisfy both elements of the policy provision with respect to coverage: (1) property damage, (2) caused by an occurrence.  The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  (Id. at 56).  An "occurrence" is defined as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions."  (Id. at 55).  Under Maryland law, an "accident" is an "act of negligence . . . when the resulting damage takes place without the insured's actual foresight or expectation."  French, 448 F.3d at 698 (citing Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 548 (Md. 1996)).  Defective construction does "not constitute an 'accident,' and therefore, [is] not an 'occurrence.'"  Id. at 703.

In French v. Assurance Co. of America, the Fourth Circuit considered whether coverage existed, under occurrence language identical to that in this case, when a contractor deficiently applied stucco to the exterior of a home, and where no part of the home itself was otherwise deficient.  Id. at 696-97.  The court held that the policy did not cover any damages that arose from the "defective application of the [stucco] exterior to [plaintiffs'] home."  Id. at 703-04.  Damage to the exterior itself was a foreseeable consequence of having applied it improperly, a consequence which the court held was not an accident, and thus, did not fall within the policy's definition of an occurrence.  Id.  Damages for "moisture intrusion into the nondefective structure and walls of [plaintiffs'] home," however, were covered.  French, 448 F.3d at 704.  The court reasoned that there was "no evidence that [the insured] subjectively expected or intended that the nondefective structure and walls of [plaintiffs'] home would suffer damage from moisture intrusion."  Id.

Essential to a finding of coverage, the court concluded, was that the damage occurred to "other nondefective parts of the home . . . which were not damaged or defective upon completion of construction . . . but may have sustained damage as the result of the failure of the [stucco] exterior." Id. at 705.

Here, plaintiffs' damages include: (1) structural damage to plaintiffs' house caused by the defective design and construction of the living room and porch roofs; and (2) moisture damage to the drywall, insulation, paint, and trim in plaintiffs' basement, caused by the defective construction of the chimney. (ECF No. 37 at 7-11). The parties do not dispute that both categories of damages constitute a physical injury to tangible property, and, therefore, qualify as "property damage" within the meaning of the policy. (ECF Nos. 36 at 21, 37 at 30). Defendant contends that plaintiffs cannot recover the cost of correcting damage caused by defective construction because those damages are expected and foreseeable, and, therefore, do not fall within the definition of "occurrence." (ECF No. 36 at 21-22). Specifically, defendant argues that all of plaintiffs' damages result from Ellison's "faulty construction," such that they constitute "the foreseeable result of the insured's failure to perform their contractual obligations." (Id. at 22 (citing Lerner Corp. v. Assurance Co. of Am., 707 A.2d 906 (Md. Ct. Spec. App. 1998)). Plaintiffs respond that these damages were caused by an occurrence because the claims do not involve damages for the defective design or construction itself, but damage to non-defective portions of the house, which were caused by the defective design or construction. (ECF No. 37 at 30).

As to the first category of damages, structural damage to the house, that damage was caused by Ellison's defective design and construction of the living room roof and the porch roof. (ECF No. 37 at 7-11, 32). It is alleged that Ellison failed to construct the roofs in accordance with the contract, which caused excessive structural deflection of the roofs and walls of plaintiffs' house.

(Id.)  It is entirely foreseeable that Ellison would be responsible for making repairs and for paying the cost of correcting that damage.  See Harbor Court Assoc. v. Kiewit Const. Co., 6 F. Supp. 2d 449, 456 (D. Md. 1998) (holding that "contractors, when they agree to construct a building, expect that they will have to erect the building in a proper manner, [and] if they do not do so, they will have to repair any defects in their work so as to 'deliver' the product they promised to provide."). Consequently, as in French, repair to a defective part of the construction was a foreseeable consequence of the defective construction, and, therefore, those damages are not an "accident" and, do not fall within the policy's definition of occurrence.

As to the second category of damages, moisture damage to the drywall, insulation, paint, and trim, plaintiffs claim the damage was caused by Ellison's improper construction of the chimney.  (ECF No. 37 at 32).  There is no evidence to suggest that the drywall, insulation, paint or trim were defective when initially constructed.  Rather, it is alleged that the defectively constructed chimney caused damage to different, otherwise non-defective portions of the house. Here, the chimney caused moisture damage to the drywall, insulation, paint, and trim.  Because the moisture damage to plaintiffs' basement is an unexpected or unforeseen consequence of Ellison's faulty chimney construction, it falls within the definition of occurrence covered by the policy.  See French, 448 F.3d at 707 (moisture intrusion caused by the defective stucco exterior into the interior of the house was an occurrence).

In sum, the structural damage to plaintiffs' house caused by the defective design and construction is not an occurrence withing the meaning of the policy and, therefore, is not covered by the policy.  On the other hand, the damage to plaintiffs' basement drywall, insulation, paint and

trim resulting from accidental water intrusion into otherwise defect free work is covered by the policy because it constitutes property damage caused by an occurrence.[3]

### D. **Exclusions to Coverage Under Ellison's Policy**

Once coverage is established, an insurer who relies on an exclusion to disclaim coverage under an insurance policy has the burden to prove that the exclusion applies.  Ellicott City Cable, LLC v. Axis Ins. Co., 196 F. Supp. 3d 577, 584 (D. Md. 2016).  Defendant contends that the policy's three "your work" exclusions, Exclusions j(5) and j(6), and Endorsement 2294, "preclude coverage for all of the damages awarded below" because plaintiffs' entire home constitutes work performed by Ellison or on Ellison's behalf.  (ECF No. 36 at 20-21, 25).  Plaintiffs respond that none of the exclusions relied on by defendant apply to the damages in this case.  (ECF No. 37 at 32-33).  Specifically, plaintiffs contend that (1) the phrase "that particular part" in Exclusions j(5) and j(6) should be interpreted to include only the specific portion of the home on which Ellison was working at the time the damage occurred, not the entire home, and (2) Endorsement 2294 does not apply because that exclusion applies only to completed operations, and Ellison never finished construction on their house.  (Id.)

Exclusions j(5) and j(6) exclude from coverage damage to:

---

[3] Although plaintiffs' Cross-Motion for Summary Judgment includes an argument that the policy covers their Maryland Consumer Protection Act claim, plaintiffs do not quantify those damages in their requested relief and the damages plaintiffs do seek do not appear to include damages awarded on plaintiffs' MCPA claim.  (ECF No. 37 at 35).  Despite this inconsistency, the court will address the parties' arguments on this issue.  Plaintiffs argue that the policy covers their MCPA claim because it alleges negligent misrepresentation, which constitutes an occurrence within the meaning of the policy.  (Id.)  Defendant responds that there is no property damage and that plaintiffs' claim asserts intentional misconduct, which does not constitute an occurrence.  (ECF Nos. 36 at 32-33, 40 at 28).  The court is persuaded by defendant's arguments.  Plaintiffs' Amended Complaint alleges that Ellison issued twenty fraudulent invoices and made false statements "with the intent that [plaintiffs] would rely on them."  (ECF No. 37-12 ¶¶ 41, 43).  Plaintiffs do not claim that Ellison's alleged violation of the MCPA included any property damage.  In the absence of any physical injury, the MCPA damages cannot constitute property damage.  See Sheets, 679 A.2d at 545 (misrepresentation of the quality of a septic tank constituted property damage because reliance on the false statements resulted in damage and loss of use of the septic tank).  Further, where the insured's act was intentional, it is not an occurrence within the meaning of the policy.  See Builders Mut. Ins. Co. v. J.L. Albrittain, Inc., No. LMB-19-1315, 2020 WL 2297187, at *5 (E.D. Va. May 7, 2020) ("[A]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard [commercial general liability] policy.") (internal citation omitted).  Plaintiffs' allegations assert intentional misconduct, and as such are not covered by the policy.

(5) **[t]hat particular part** of real property on which [the insured] or any contractors or subcontractors working directly or indirectly on [the insured's] behalf are performing operations, if the 'property damage' arises out of those operations; and,

(6) **[t]hat particular part** of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

(ECF No. 36-2 at 45-46) (Emphasis added).

"'The primary purpose of the 'your work' exclusion[s] is to prevent [general commercial] liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business.'" J.L. Albrittain, Inc., 2020 WL 2297187, at *7 (quoting Jessco, Inc, v. Builders Mut. Ins. Co., 472 F. App'x 225, 229 (4th Cir. 2012)). Although no Maryland court has squarely addressed the meaning of the phrase "that particular part," found in exclusions j(5) and j(6), other federal courts have analyzed the phrase. See Marroquin v. Canales, 505 F. Supp. 2d 283, 294 (D. Md. 2007) (examining cases from other federal jurisdictions to determine the outcome most likely to be reached by the Maryland courts). The vast majority of those courts have interpreted "that particular part" to include the entire project on which the insured was contracted to perform work. See e.g., Cincinnati Specialty Underwriters Ins. Co. v. KNS Group, LLC, No. 21-13628, 2022 WL 5238711, at *5 (11th Cir. Oct. 6, 2022) (internal citations omitted) ("Exclusions j(5) and j(6) . . . cover the pieces of real property 'the contractor's operations were intended to include.' So, for example, when a contractor damaged part of a customer's pool while draining the entire pool, a Florida appeals court held that the damage to the pool was excluded from coverage."); West Side Salvage, Inc. v. RSUI Indem. Co., 878 F.3d 219, 224 (7th Cir. 2017) (citation omitted) ("[t]he exclusion[ ] do[es] not exclude coverage for damage done only to the precise area of the property being worked on. Rather, the exclusion[ ] appl[ies] to property damage caused by poor workmanship."); Arroyo v. Unigard Ins. Co., 669 Fed. App'x 881 (9th Cir. 2016) ("[t]he district court properly construed 'that particular part of real property'

to cover [plaintiff]'s entire vineyard that [insured] was hired to develop and manage.  The district court also properly concluded that 'are performing operations' does not exclude only property damage that developed simultaneously as the work was being performed, but also property damage that clearly flows from the insured's work on the property."); Brake Landscaping & Lawrence, Inc. v. Hawkeye-Security Ins. Co., 625 F.3d 1019, 1024 (8th Cir. 2010) ("coverage was excluded because applying the non-selective herbicide to the lawns constituted 'your work' under the policy. Therefore, any repair, restoration, or replacement of any lawn was the result of the lawn-care company's 'work' and, thus, excluded from coverage," rather than narrowly construing the exclusion to include only the weeds which the insured intended to spray); Essex Ins. Co. v. Hines, 358 Fed. App'x 596, 599 (5th Cir. 2010) ("Our precedent makes plain that the 'that particular part' language of exclusion 'limits the scope of the exclusion to damage to parts of the property that were actually worked on by the insured."); Haren Construction Co. v. Continental Ins. Co., 234 F.3d 1268 (6th Cir. 2000) (where the insured was hired to perform work on a "homogenous rock mass, the entire rock constituted 'that particular part of real property'" on which the insured was working); see also Grinnell Mut. Reinsurance Co v. Lynne, 686 N.W.2d 118, 126 (N.D. 2004) ("[t]he particular part of real property on which [the insured] was working was the house.  Thus, damage to the house resulting from [the insured]'s work will not be covered by the policy due to the exclusions included in the policy.").

This court, applying Maryland law, has addressed the application of a "your work" exclusion similar to that at issue in this case.  In Mutual Benefit Group v. Wise M. Bolt Co., Inc., 227 F. Supp. 2d 469, 473 (D. Md. 2002), the insured brought suit against its insurer for failure to defend the insured in a separate lawsuit brought by homeowners unsatisfied with the insured's work.  The insurer disclaimed coverage, arguing that damage caused by the insured's work was

excluded by the "your work" exclusions.  Id. at 473-74.  The policy's "your work" exclusions, barred coverage for "damages claimed for any loss, cost or expense incurred by you or others for . . . '[y]our work'" where "your work" is defined as "[w]ork or operations performed by you or on your behalf."  Id. at 477-78.  The court reasoned that "[t]he 'product' of the [insured] was the house they built," meaning any damage to the house was excluded from coverage.  Id. at 477.  The court finds the reasoning in Wise M. Bolt Co., Inc. and the authority cited above to be persuasive.

In this case, Ellison was contracted to build plaintiffs' home, (ECF No. 36 at 8), and the property damage claimed by plaintiffs arose from Ellison's work or operations in constructing the home.  (ECF No. 37 at 7-11).  Based on the cases cited herein, the court concludes that, for purposes of the policy exclusions, "that particular part" of the property on which Ellison was working extends to the entire home.  Thus, with respect to Exclusion j(5), damage to plaintiffs' house is excluded from coverage because the damage was caused by Ellison's work.  Specifically, the second category of damages identified above, the moisture damage to plaintiffs' basement drywall, insulation, paint, and trim involves only damage to Ellison's work caused by Ellison.  The moisture intrusion resulted from Ellison's defective construction of the chimney which allowed water to accumulate in plaintiffs' basement.  All of these damages were caused by Ellison's poor workmanship, and, as such, are excluded under Exclusion j(5).[4]

Coverage for these damages is also excluded pursuant to Exclusion j(6), which excludes damage to plaintiffs' house requiring replacement or repair if it resulted from work incorrectly

---

[4] Plaintiffs argue that Exclusion j(5) contains a temporal limitation such that it does not apply in this case.  (ECF No. 37 at 34).  Plaintiffs suggest that the phrase "are performing operations" in Exclusion j(5) means that only damages which occur contemporaneously with Ellison's work are excluded from coverage under the policy.  (Id.)  To that end, plaintiffs maintain that any damages that occurred after Ellison stopped construction to pursue its Mechanic's Lien lawsuit in May 2018 are not excluded by Exclusion j(5).  (Id.)  For the reasons discussed below, the court concludes that plaintiffs put the house to its intended use in May 2018, and any damages not excluded by j(5) are, therefore, excluded by Endorsement 2294.  To the extent Exclusion j(5) does not apply to plaintiffs' damages, Exclusion j(6) which contains no temporal limits applies to exclude plaintiffs' damages.

performed by the insured.  The moisture damage to plaintiffs' basement, resulted from improper construction of the chimney.  (Id.)  Where work is performed improperly, Exclusion j(6) has been held to apply to more than the precise area of the property on which the insured was working.  See West Side Salvage, Inc., 878 F.3d at 224 (exclusion applies to all property damage to the grain bin on which insured was working because that property damage was caused by the insured's poor workmanship).  Damages to the drywall, insulation, painting, and trim resulting from Ellison's defective work on the chimney falls within Exclusion j(6).[5]

Finally, defendant relies on Endorsement 2294 to exclude any coverage for property damage which occurred after Ellison's work was deemed completed.[6]  (ECF No. 36 at 24-25). Plaintiffs argue that Endorsement 2294 does not apply because Ellison never completed their house.  (Id. at 32).  Plaintiffs rely on a Certificate of Occupancy which was issued on September 23, 2022, after repairs were made and the work was completed by a replacement contractor, as evidence that Ellison never completed its work.  (ECF Nos. 42 at 1-2, 42-2).  Endorsement 2294 excludes from coverage property damage to "'your work' arising out of it or any part of it and included in the "products completed operations hazard."  (ECF No. 36-4 at 41).  The "Products-completed operations hazard" provision excludes coverage for all property damage caused by the insured's work after the work is deemed completed.  (ECF No. 36-2 at 55).  As relevant here, work

---

[5] As noted above, the court concludes that the first category of plaintiffs' damages, the structural damage to plaintiffs' house, was not covered by the policy.  Even if these damages were covered by the policy, they would be excluded from coverage by Exclusions j(5) and j(6).  As to Exclusion j(5), Ellison was hired to construct the house.  The structural deficiency and excessive deflection arose from Ellison's faulty work in designing and constructing the structure of the house.  (ECF No. 37 at 32).  The property damage to the house was, therefore, the direct result of Ellison and its subcontractors' operations, damages excluded by Exclusion j(5).  As to Exclusion j(6), plaintiffs seek damages for the cost of repairing and replacing work that was deficiently performed by Ellison when it initially built the house.  These repairs are the result of incorrectly performed work by  Ellison and its subcontractors, and are excluded.

[6] Because all of the damages sought by plaintiffs fall within the exclusions cited by defendant, it is immaterial as to exactly when the property damage occurred.  If the damages occurred prior to when Ellison's work was deemed completed, Exclusions j(5) and j(6) exclude coverage.  Alternatively, if the damages occurred after Ellison's work was deemed completed, Endorsement 2294 applies and coverage is excluded.

is deemed completed "[w]hen that part of the work done at a job site has been put to its intended use by any person." (Id.) Defendant argues that when plaintiffs moved into the home in May 2018, they put the home to its intended use. (ECF No. 40 at 4). Plaintiffs respond that their intended use was a finished house without any defects, such that the home was not put to its intended use in May 2018. (ECF No. 41 at 25). The parties do not dispute that plaintiffs moved into the home in May 2018. Applying a common sense understanding of the term, the intended use of a house is as a place of residence. Cf. Zurich Ins. Co. v. Principal Mut. Ins. Co., 761 A.2d 344, 348 (Md. Ct. Spec. App. 2000) (the "intended use" of an elevator is "to transport passengers, office supplies, and equipment"). When plaintiffs moved into the home, they put it to its intended use. Accordingly, as of May 2018, the home was deemed completed within the meaning of the policy, and Endorsement 2294 applies.

Based on the above, the court concludes that the policy's "your work" exclusions, Exclusions j(5) and j(6), as well as Endorsement 2294 exclude coverage for the damages sought by plaintiffs in this case. Accordingly, defendant's Motion for Summary Judgment is granted, and plaintiffs' Cross-Motion for Summary Judgment is denied.

## IV.    **CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 35) is GRANTED, plaintiffs' Cross-Motion for Summary Judgment (ECF No. 37) is DENIED, and plaintiff's Motion for Leave to Supplement (ECF No. 42) is GRANTED. A separate order will be issued.

Date: March 30, 2023

/s/

Beth P. Gesner
Chief United States Magistrate Judge